597 So.2d 782 (1992)
David Kidd GORHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 77366.
Supreme Court of Florida.
March 19, 1992.
Rehearing Denied May 29, 1992.
*783 Stuart H. Singer, Holly R. Skolnick and Michelle A. Fongyee of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, and Thomas K. Equels of Holtzman, Krinzman & Equels, P.A., Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Celia A. Torenzio, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
David Kidd Gorham, a prisoner under sentence of death, appeals the trial court's denial of his motion to vacate judgment and sentence filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and vacate the conviction and sentence of death and remand for a new trial.
Gorham was charged with the murder of a Pompano man. He was tried and found guilty, but a mistrial was declared before sentencing. On retrial, Gorham was again found guilty of first-degree murder and attempted robbery. The jury recommended a life sentence, but the judge overrode the jury recommendation and imposed the death penalty. On direct appeal, this Court affirmed Gorham's conviction and sentence. Gorham v. State, 454 So.2d 556 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 941, 83 L.Ed.2d 953 (1985). This Court denied Gorham's application to file a writ of error coram nobis without prejudice to file a motion for post-conviction relief. Gorham v. State, 462 So.2d 1107 (Fla. 1985). In January 1986, Gorham sought collateral review pursuant to rule 3.850, which was summarily denied by the trial court. On appeal, this Court reversed the trial court's summary denial of three alleged Brady[1] violations and one claim of ineffective assistance of counsel, and remanded for an evidentiary hearing on those issues. Gorham v. State, 521 So.2d 1067, 1069 (Fla. 1988).
After conducting an evidentiary hearing on the remanded issues, the trial court found no merit to Gorham's claims and denied all relief. Gorham appeals the denial, rearguing the claims raised below. Gorham alleges two separate Brady violations relating to the State's key witness Ada Johnson: 1) that the State failed to disclose Johnson's motion for mitigation which asserted mitigation recommendations from the prosecutor and lead detective in Gorham's murder case; and 2) the State's nondisclosure of Johnson's confidential police informant status. As to the *784 first claim, the motion for mitigation which Johnson sent to the judge who tried her case cannot be considered Brady material in this case. This motion was never served upon the State; the order denying the motion did not mention the alleged mitigation recommendation; and no mitigation deal was ever offered to Johnson. However, we find Gorham's second claim to be dispositive.
The evidence linking Gorham to the murder was largely circumstantial, including Gorham's use of the victim's credit cards following the murder and Gorham's fingerprints on a paper receipt located near the victim's body. The crime scene, as described by the responding police officer, was a warehouse where both doors "were propped wide open." The record also indicates that the warehouse is bordered by a city street and is adjacent to a major highway and railroad tracks in one direction and a residential neighborhood in the other direction. This "open" warehouse was unsecured for over twenty minutes after the shooting.[2] Two witnesses testified to having seen a man run from the scene of the crime. Witness Kenneth Gardner said Gorham was definitely not the man; the other witness, Ada Johnson, testified that she could not see the man's face, but thought it was Gorham. Johnson also testified that Gorham had attempted to rent an apartment from her, had shown her a pistol, and promised to get the approximately $600 he would need for rent and deposits. Gorham, 454 So.2d at 558. In its closing argument, the State noted that Johnson was believable because she "had nothing to gain" from her testimony. Unknown to Gorham at the time of the trial or appeal, Johnson had served as a paid confidential police informant in other cases and had received a payment of ten dollars related to Gorham's case during the pendency of the trial. This information was never turned over to defense counsel by the State.
The State contends that Johnson's informant status in other cases cannot be deemed Brady material in the instant case and that there is no evidence that Johnson was a confidential informant in this case. We do not agree with the State's contentions. The Florida Evidence Code provides that the credibility of a witness may be attacked by showing that the witness is biased. § 90.608(1)(b), Fla. Stat. (1981). A witness' relationship to a party, personal obligations to a party, or employment by a party all have been recognized as proper questions on cross-examination going to the interest and bias of the witness. Charles W. Ehrhardt, Florida Evidence § 608.4 (2d ed. 1984).
The State admits that Johnson was a confidential police informant on other occasions. Even though the police did not reveal Johnson's informant status to the state attorney who prosecuted Gorham's case, the state attorney is charged with constructive knowledge and possession of evidence withheld by other state agents, such as law enforcement officers. State v. Coney, 294 So.2d 82 (Fla. 1973); see also State v. Del Gaudio, 445 So.2d 605 (Fla.3d DCA), review denied, 453 So.2d 45 (Fla. 1984). At the evidentiary hearing on Gorham's 3.850 motion, the state attorney stated that had he known about Johnson's informant status he would "certainly" have given that information to the defense because it "comes within the Brady definition." Receipts from the Pompano Police Department show that Johnson received substantial payments for confidential information relating to other cases. A receipt dated June 9, 1982, also indicates that while Johnson was incarcerated during the period between Gorham's two trials she received ten dollars related to this case from the Pompano police.[3] This information was *785 never disclosed to Gorham, and, thus, the defense was unable to attack Johnson's credibility by showing that she was biased.
In evaluating Brady claims, courts must determine whether the withheld evidence is "material," rather than just favorable to the accused. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). The standard for determining "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. Given this trial's circumstantial nature, Johnson's role as the State's key witness, and the defense's inability to impeach Johnson based upon the undisclosed evidence, we find that such a reasonable probability exists in this case. Although the factual scenario of Gorham's case is somewhat different, the same principle regarding the truthfulness of a witness' testimony which concerned the United States Supreme Court in Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), is presented here. As the Court stated, "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." Id. at 269, 79 S.Ct. at 1177.
Accordingly, we vacate Gorham's conviction for first-degree murder and sentence of death, thereby rendering moot the remaining claims. We remand to the trial court for a new trial.
It is so ordered.
SHAW, C.J. and OVERTON, BARKETT, KOGAN and HARDING, JJ., concur.
GRIMES, J., dissents with an opinion, in which McDONALD, J., concurs.
GRIMES, Justice, dissenting.
I agree that the defense should have been advised that the Pompano police had used Johnson as a confidential informant. However, with respect to the ten-dollar payment, a police detective testified that this was given to Johnson to buy cosmetics while in jail because she had been helpful in the past and not because of the Gorham case.
More importantly, I am convinced that if whatever information known to the State which could have been used to impeach Ada Johnson had been turned over to the defense, the outcome of this case would have been the same. It must be remembered that the victim's wallet and some of his papers were found near the body. The State proved that Gorham subsequently charged purchases to the credit cards which were taken from the wallet. In addition, Gorham's fingerprint was found on one of the victim's papers near the body. Gorham gave three conflicting statements to the police. He first denied even being in the area of the killing. Then he claimed that he bought the credit cards from two men. Finally, he stated that he obtained the credit cards from a wallet he found on the road outside the garage where the victim was killed after having heard some shots from inside. No matter how much Ada Johnson might have been discredited, Gorham can make no plausible explanation for the wallet and the paper with Gorham's fingerprints on it being found next to the body.
The test for granting a new trial under these circumstances is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); Steinhorst v. State, 574 So.2d 1075, 1077 (Fla. 1991) (quoting Bagley). In this case, the trial judge conducted an exhaustive evidentiary hearing on the issue and denied Gorham's motion. I would affirm that order.
McDONALD, J., concurs.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] The record indicates that a police officer was dispatched at 6:59 p.m. to the detention center where witness Kenneth Gardner was detained. The officer testified that he arrived at the warehouse at 7:15 p.m. However, before Kenneth Gardner could alert the police, he had to "hop" back to the detention center, located four blocks away from the warehouse and across a major highway, because he injured his ankle running from the warehouse when he heard gunshots.
[3] The receipt bears the identification number of Gorham's murder investigation file.