THE STATE OF NEVADA, APPELLANT, *v.*
CHARLES EDWARD HUEBLER, RESPONDENT.

No. 50953

April 26, 2012                                                    275 P.3d 91

[Rehearing denied August 1, 2012]

---

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard Gammick*, District Attorney, and *Gary H. Hatlestad*, Chief Appellate Deputy District Attorney, Washoe County, for Appellant.

*Franny A. Forsman*, Federal Public Defender, and *John C. Lambrose* and *Lori C. Teicher*, Assistant Federal Public Defenders, Las Vegas, for Respondent.

## OPINION

By the Court, DOUGLAS, J.:

This case arises from an untimely post-conviction petition for a writ of habeas corpus stemming from a conviction, pursuant to a guilty plea, of lewdness with a child under 14 years of age. In his petition, respondent Charles Huebler alleged that he had good cause for his delay in filing the petition because the State improperly withheld surveillance videotapes that were exculpatory, which rendered his guilty plea involuntary. The district court granted relief to Huebler, and the State appeals.

In this appeal, we consider whether the State is required under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose material exculpatory evidence within its possession to the defense before the entry of a guilty plea. We conclude that the State is required to disclose such evidence before entry of a guilty plea. When the State fails to make the required disclosure, the defendant may challenge the validity of the guilty plea on that basis. To succeed, the defendant must demonstrate the three components of a *Brady* violation in the context of a guilty plea: that the evidence at issue is exculpatory, that the State withheld the evidence, and that the evidence was material. As to the materiality component in particular, we hold that the test is whether there is a reasonable probability or possibility (depending on whether there was a specific discovery request) that but for the State's failure to disclose the

evidence the defendant would have refused to plead guilty and would have gone to trial. Because Huebler failed to demonstrate that he would have refused to plead guilty and would have gone to trial had the evidence been disclosed before the plea, we reverse the district court's order.

## FACTS

A fellow resident of Huebler's apartment complex viewed Huebler swimming with children in the complex's pool, believed Huebler was acting inappropriately with the children, and called the police. A seven-year-old girl who resided at the complex told the police that Huebler touched her buttocks and vagina while they were swimming. The child victim also stated that Huebler touched her inappropriately on multiple occasions while in the swimming pool and that the touching occurred underwater. The police collected surveillance videotapes that showed Huebler and the girl together in the pool on three days.

Huebler was arrested and charged with lewdness with a child under the age of 14. Counsel was appointed to represent Huebler, and counsel filed a motion for discovery. Counsel also asked the district attorney's office if it would provide access to the surveillance videotapes; the prosecutor had not yet received a copy from the police but told defense counsel that the videotapes would be sent to the public defender's office when the district attorney's office received them. Soon after the request for the surveillance videotapes, and only one month after his arrest, Huebler entered a guilty plea to lewdness with a child under the age of 14. Huebler did not file a direct appeal.

More than two years after entry of the judgment of conviction, Huebler, with the aid of counsel, filed a post-conviction petition for a writ of habeas corpus in the district court. In his petition, Huebler alleged that, among other things, he had good cause for the delay in filing his petition because the State had violated *Brady* by withholding the surveillance videotapes. He alleged that, but for the State's failure to disclose the evidence, he would have refused to plead guilty and proceeded to trial. The State opposed the petition, arguing that Huebler failed to demonstrate cause and prejudice. The district court conducted an evidentiary hearing and granted Huebler relief, determining that the evidence was exculpatory, had been withheld by the State, and was material to Huebler's defense because the lack of access diminished his counsel's "ability to provide a sound defense."

On appeal, the State argues that the district court did not use the appropriate materiality standard in deciding that Huebler's *Brady* claim was sufficient to demonstrate good cause for his delay and to warrant the relief granted. We agree and reverse.

## DISCUSSION

### The relationship between good cause for delay in filing a petition and the test for a Brady violation

NRS 34.726 limits the time in which a post-conviction petition for a writ of habeas corpus that challenges a judgment of conviction or sentence may be filed. Such a petition must be filed within one year after entry of the judgment of conviction or, if a timely appeal is taken from the judgment, within one year after this court issues its remittitur, absent a showing of good cause for the delay. NRS 34.726(1); *Dickerson v. State*, 114 Nev. 1084, 967 P.2d 1132 (1998) (holding that NRS 34.726(1) refers to timely direct appeal). Huebler did not pursue a direct appeal, and he filed his petition on May 26, 2006, more than two years after the judgment of conviction was entered on October 24, 2003. Thus, Huebler's petition was untimely filed and procedurally barred absent a demonstration of good cause for the delay.

To show good cause for delay under NRS 34.726(1), a petitioner must demonstrate two things: "[t]hat the delay is not the fault of the petitioner" and that the petitioner will be "unduly preju-dice[d]" if the petition is dismissed as untimely. Under the first re-quirement, "a petitioner must show that an impediment external to the defense prevented him or her from complying with the state procedural default rules." *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003) (citing *Lozada v. State*, 110 Nev. 349, 353, 871 P.2d 944, 946 (1994)). "An impediment external to the defense may be demonstrated by a showing 'that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials, made compliance impractica-ble.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations and quotations omitted)). Under the second requirement, a petitioner must show that errors in the proceedings underlying the judgment worked to the petitioner's actual and substantial dis-advantage. *Hogan v. Warden*, 109 Nev. 952, 959-60, 860 P.2d 710, 716 (1993). We give deference to the district court's factual find-ings regarding good cause, but we will review the court's applica-tion of the law to those facts de novo. *See Lott v. Mueller*, 304 F.3d 918, 922 (9th Cir. 2002) (stating that district court's findings of facts are reviewed for clear error, but questions of law are re-viewed de novo); *see also Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005) (using similar reasoning for review of claims of ineffective assistance of counsel).[2]

---

[2]We recognize that *Colley v. State*, 105 Nev. 235, 236, 773 P.2d 1229, 1230 (1989), states that a district court's determination regarding the existence of good cause will not be disturbed absent an abuse of discretion; however,

To demonstrate good cause for his delay, Huebler claimed below that the State violated *Brady* by withholding exculpatory evidence, that the State's withholding of the exculpatory evidence caused the delay, and that the withholding of the exculpatory evidence prejudiced him by making his guilty plea involuntary. Huebler's good-cause showing therefore is intertwined with the merits of his *Brady* claim.

" '*Brady* and its progeny require a prosecutor to disclose evidence favorable to the defense when that evidence is material either to guilt or to punishment.' " *State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (quoting *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000)). To prove a *Brady* violation, the accused must make three showings: (1) the evidence is favorable to the accused, either because it is exculpatory or impeaching; (2) the State withheld the evidence, either intentionally or inadvertently; and (3) " 'prejudice ensued, i.e., the evidence was material.' " *Id.* (quoting *Mazzan*, 116 Nev. at 67, 993 P.2d at 37). When a *Brady* claim is raised in an untimely post-conviction petition for a writ of habeas corpus, the petitioner has the burden of pleading and proving specific facts that demonstrate both components of the good-cause showing required by NRS 34.726(1). *Id.* Those components parallel the second and third prongs of a *Brady* violation: establishing that the State withheld the evidence demonstrates that the delay was caused by an impediment external to the defense,[3] and establishing that the evidence was material generally demonstrates that the petitioner would be unduly prejudiced if the petition is dismissed as untimely. *Id.* Therefore, Huebler must establish both the second and third prongs of a *Brady* violation in order to overcome the procedural time bar. Because a claim that the State committed a *Brady* violation requires consideration of both factual circumstances and legal issues, we conduct a de novo review of the district court's decision resolving a *Brady* claim. *Id.* (citing *Mazzan*, 116 Nev. at 66, 993 P.2d at 36).

*Guilty pleas and Brady violations*

Before addressing the substance of Huebler's *Brady* claim, we must address a threshold issue: may a defendant challenging the

---

under the current statutory scheme the time bar in NRS 34.726 is mandatory, not discretionary. *State v. Dist. Ct. (Riker)*, 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005); *State v. Haberstroh*, 119 Nev. 173, 180, 69 P.3d 676, 681 (2003); *Pellegrini v. State*, 117 Nev. 860, 885-86, 34 P.3d 519, 536 (2001).

[3]We note that a *Brady* claim still must be raised within a reasonable time after the withheld evidence was disclosed to or discovered by the defense. *See Hathaway v. State*, 119 Nev. 248, 71 P.3d 503 (2003). It is not clear whether Huebler demonstrated that he raised his *Brady* claim within a reasonable time after discovering it.

validity of a guilty plea assert a *Brady* claim? This issue arises because *Brady* evolved from the due process guarantee of a fair trial, *Brady*, 373 U.S. at 86-87, and therefore has been described as a trial right, *U.S. v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010), but when a defendant pleads guilty, he waives several constitutional guarantees, including the due process right to a fair trial, and any errors that occurred before entry of the plea. *Tollett v. Henderson*, 411 U.S. 258 (1973); *Webb v. State*, 91 Nev. 469, 538 P.2d 164 (1975). We have never addressed in a published opinion whether a *Brady* claim can survive the entry of a guilty plea.[4]

Several federal circuit courts of appeals have held that a *Brady* violation may be asserted to challenge the validity of a guilty plea. *E.g.*, *Sanchez v. U.S.*, 50 F.3d 1448, 1453 (9th Cir. 1995); *White v. U.S.*, 858 F.2d 416, 422 (8th Cir. 1988); *Miller v. Angliker*, 848 F.2d 1312, 1319-20 (2d Cir. 1988); *Campbell v. Marshall*, 769 F.2d 314, 321 (6th Cir. 1985); *accord State v. Sturgeon*, 605 N.W.2d 589, 596 (Wis. Ct. App. 1999). *But see Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000) (holding that failure to disclose exculpatory evidence before entry of guilty plea does not render plea involuntary or constitute *Brady* violation). The Ninth Circuit, for example, has reasoned that " 'a defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case' " and a waiver of the right to trial "cannot be deemed 'intelligent and voluntary' if 'entered without knowledge of material information withheld by the prosecution.' " *Sanchez*, 50 F.3d at 1453 (quoting *Miller*, 848 F.2d at 1320). A contrary decision, according to the Ninth Circuit, could tempt prosecutors "to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." *Id.*

The validity of those decisions allowing a challenge to a guilty plea based on a *Brady* violation have been called into question following the United States Supreme Court's decision in *United States v. Ruiz*, 536 U.S. 622 (2002)—the Court's only decision to date that has addressed *Brady* in the guilty-plea context. *See U.S. v. Danzi*, 726 F. Supp. 2d 120, 127 (D. Conn. 2010) (discussing government challenge to circuit precedent based on *Ruiz*). In that case, the Supreme Court held that the Constitution does not require the prosecution to disclose *impeachment* information related to informants or other witnesses before entering a plea agreement with a defendant. *Ruiz*, 536 U.S. at 625. The *Ruiz* Court did not address the obligation to disclose *exculpatory* information; as a result, courts have split as to whether the Court's decision also en-

---

[4]The parties here agree that a *Brady* claim survives the entry of a guilty plea. In particular, the State observes in its opening brief that "[t]o rule otherwise could introduce an unacceptable level of gamesmanship into the litigation."

compasses exculpatory information.[5] *Compare U.S. v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (rejecting argument that *Ruiz* implied that exculpatory evidence must be disclosed before guilty plea is entered), *with McCann v. Mangialardi*, 337 F.3d 782, 787-88 (7th Cir. 2003) (reasoning that "it is highly likely" based on language in *Ruiz* indicating "a significant distinction between impeachment information and exculpatory evidence" that Supreme Court would require prosecution to disclose exculpatory evidence before guilty plea is entered). *See also Moussaoui*, 591 F.3d at 285-86 (discussing differing opinions regarding scope of *Ruiz* in dicta but leaving issue unresolved because prosecutor did not withhold exculpatory evidence). We are persuaded by language in *Ruiz* and due process considerations that a defendant may challenge the validity of a guilty plea based on the prosecution's failure to disclose material exculpatory information before entry of the plea.[6]

In holding that the Constitution does not require the prosecution to disclose impeachment information before a guilty plea is entered, the *Ruiz* Court focused on the nature of impeachment information and its limited value in deciding whether to plead guilty. The Court first looked to the requirements for a knowing and vol-

---

[5]"Exculpatory evidence" is defined as "[e]vidence tending to establish a criminal defendant's innocence." *Black's Law Dictionary* 637 (9th ed. 2009). "Impeachment evidence" is defined as "[e]vidence used to undermine a witness's credibility." *Id.*

[6]We recognize that the same piece of evidence may be characterized as both exculpatory and impeachment evidence. *Cf. Strickler v. Greene*, 527 U.S. 263, 282 n.21 (1999) (rejecting argument that withheld evidence was inculpatory and therefore did not fall under *Brady* because Court's "cases make clear that *Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness"). Before *Ruiz* this distinction made little difference because both types of evidence were treated as favorable to the defense and subject to disclosure under *Brady*. *See United States v. Bagley*, 473 U.S. 667, 676 (1985) (explaining that impeachment evidence as well as exculpatory evidence falls under *Brady* and that "Court has rejected any . . . distinction between impeachment evidence and exculpatory evidence"). For purposes of this case, we need not address whether *Ruiz* leaves open the possibility that certain types of impeachment information must be disclosed before entry of a guilty plea, *see* 536 U.S. at 633 (Thomas, J., concurring in judgment), or, if *Ruiz* does foreclose any challenge based on withheld impeachment information, whether we should recognize greater protections under the Due Process Clause of the Nevada Constitution, *cf. Roberts v. State*, 110 Nev. 1121, 881 P.2d 1 (1994) (relying on state due process guarantee in adhering to different materiality tests for *Brady* claims depending on whether there was a specific request, despite contrary Supreme Court decisions), *overruled on other grounds by Foster v. State*, 116 Nev. 1088, 13 P.3d 61 (2000). *See also* Kevin C. McMunigal, *Guilty Pleas, Brady Disclosure, and Wrongful Convictions*, 57 Case W. Res. L. Rev. 651 (2007) (discussing flaws in *Ruiz* Court's reasoning). The State has not asserted that *Ruiz* precludes the relief granted by the district court because the evidence at issue is impeachment evidence rather than exculpatory evidence; therefore, those are issues for another day.

untary plea. The Court explained that "[i]t is particularly difficult to characterize impeachment information as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant" because the value of impeachment information "will depend upon the defendant's own independent knowledge of the prosecution's potential case—a matter that the Constitution does not require prosecutors to disclose." *Ruiz*, 536 U.S. at 630. Because of the limited value of impeachment evidence, the Court was reluctant to distinguish it as being more important than other information of which a defendant may be ignorant but still enter a knowing and voluntary plea. *Id.* at 630-31.

The *Ruiz* Court then turned to the due process considerations that led to its decision in *Brady*, weighing the nature of the private interest at stake, the value of the additional safeguard, and any adverse impact that the additional safeguard would have on the government's interests. *Id.* at 631. Specifically, the Court repeated that the nature of impeachment information limited the added value of a right to that information before pleading guilty. And the Court rejected the idea that the additional right would have added value in reducing the chance that innocent individuals would plead guilty, in part because the plea agreement in that case stated that the prosecution would "provide 'any information establishing the factual innocence of the defendant.'" *Id.* Against the limited private interest and added value, the Court determined that an obligation to provide impeachment information before entry of a guilty plea "could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* Given these considerations, the Court held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at 633.

In our opinion, the considerations that led to the decision in *Ruiz* do not lead to the same conclusion when it comes to material exculpatory information. While the value of impeachment information may depend on innumerable variables that primarily come into play at trial and therefore arguably make it less than critical information in entering a guilty plea, the same cannot be said of exculpatory information, which is special not just in relation to the fairness of a trial but also in relation to whether a guilty plea is valid and accurate. For this reason, the due process calculus also weighs in favor of the added safeguard of requiring the State to disclose material exculpatory information before the defendant enters a guilty plea.

It is not every day that an innocent person accused of a crime pleads guilty, but a right to exculpatory information before entering a guilty plea diminishes the possibility that innocent persons

accused of crimes will plead guilty. *See* Kevin C. McMunigal, *Guilty Pleas, Brady Disclosure, and Wrongful Convictions*, 57 Case W. Res. L. Rev. 651 (2007) (discussing reasons that innocent defendant might plead guilty and how *Brady* disclosure in the guilty-plea context helps reduce risk of such pleas). The distinction between exculpatory and impeachment information in this respect is implicitly recognized in the *Ruiz* Court's focus on the disclosure requirement in the plea agreement in that case, which provided that the prosecution would disclose "any information establishing the factual innocence of the defendant." 536 U.S. at 631. Unlike in *Ruiz*, it is information that could establish the factual innocence of the defendant—exculpatory information—that is at issue. In turn, the adverse impact on the government of an obligation to provide exculpatory information is not as significant as the impact of an obligation to provide impeachment information. And importantly, the added safeguard comports with the prosecution's " 'special role . . . in the search for truth.' " *Strickler v. Greene*, 527 U.S. 263, 281 (1999); *see also Jimenez v. State*, 112 Nev. 610, 618, 918 P.2d 687, 692 (1996) ("The prosecutor represents the state and has a duty to see that justice is done in a criminal prosecution."); ABA Standards for Criminal Justice, Prosecution Function Standard 3-1.2(c) (3d ed. 1993) ("The duty of the prosecutor is to seek justice, not merely to convict."); *id.* cmt. ("[I]t is fundamental that the prosecutor's obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused as well as to enforce the rights of the public."). We therefore hold that a defendant may challenge the validity of a guilty plea based on the prosecution's failure to disclose material exculpatory information before entry of the plea. *Cf.* RPC 3.8(d) (providing that "prosecutor in a criminal case shall" "[m]ake timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused").

The guilty-plea context, however, requires a different approach to the prejudice component of a *Brady* violation. Prejudice for purposes of a *Brady* violation requires a showing that the withheld evidence is "material." Normally, evidence is material if it "creates a reasonable doubt."[7] *Mazzan*, 116 Nev. at 74, 993 P.2d at 41. That standard of materiality is not helpful in the guilty-plea context because the defendant has admitted guilt. In fashioning a materi-

---

[7]We have explained that when there was no defense request or only a general defense request for evidence, withheld evidence "creates a reasonable doubt" when "there is a reasonable probability that the result would have been different if the evidence had been disclosed." *Mazzan*, 116 Nev. at 74, 993 P.2d at 41. But after a specific request for evidence, withheld evidence "creates a reasonable doubt" when "there is a reasonable possibility that the undisclosed evidence would have affected the outcome." *Id.*

ality test in that context, we also must be mindful that guilty pleas are presumptively valid and that the defendant therefore bears a heavy burden when challenging the validity of a guilty plea. *See Molina v. State*, 120 Nev. 185, 190, 87 P.3d 533, 537 (2004).

Other courts considering this issue have applied a standard of materiality that is based on the relevance of the withheld evidence to the defendant's decision to plead guilty: "whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *Sanchez*, 50 F.3d at 1454. This materiality test is similar to the prejudice test that is used to evaluate ineffective-assistance claims by a defendant who has pleaded guilty. *Cf. Hill v. Lockhart*, 474 U.S. 52 (1985) (holding that to establish prejudice prong of ineffective-assistance claim, defendant who pleaded guilty must demonstrate reasonable probability that but for counsel's deficient performance he would not have pleaded guilty and would have insisted on going to trial). We conclude that this materiality test best parallels the materiality test used for *Brady* claims in the trial context while also ensuring that guilty pleas are not lightly set aside. We therefore adopt the materiality test set forth by the Ninth Circuit in *Sanchez v. U.S.*, 50 F.3d 1448, 1454 (9th Cir. 1995), but we adhere to our decision in *Roberts v. State*, 110 Nev. 1121, 881 P.2d 1 (1994), *overruled on other grounds by Foster v. State*, 116 Nev. 1088, 13 P.3d 61 (2000), to use separate materiality tests depending on whether there was a specific request by the defense. Thus, when the defendant has made a specific request, withheld evidence is material in the guilty-plea context if there is a reasonable *possibility* that but for the failure to disclose the evidence the defendant would have refused to plead and would have insisted on going to trial.

The materiality test is a high bar, *cf. Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (describing ineffective-assistance test as "high bar"), that involves both a subjective and objective component. As a threshold matter, a defendant must affirmatively assert that he would have pleaded not guilty and insisted on going to trial. *See Hill*, 474 U.S. at 60 (rejecting ineffective-assistance claim because petitioner "did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial"). That is a subjective assertion.[8] But the validity and reasonableness

---

[8] Huebler's petition summarily asserts that "[b]ut for the failure of the State to turn over this exculpatory evidence, [he] would not have pled guilty and proceeded to trial." We have not been asked to determine whether this assertion as sufficient to warrant an evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498, 686 P.2d 222 (1984).

of that subjective assertion must be evaluated through an objective analysis considering the totality of the circumstances. *See Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995) (discussing prejudice prong of *Hill* and observing that "[o]bjective analysis of the prejudice prong is probably the only workable means of applying *Hill*"), *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996); *see also Sanchez*, 50 F.3d at 1454 (explaining that materiality test for *Brady* violation in guilty-plea context is "an objective one that centers on 'the likely persuasiveness of the withheld information'" with respect to decision whether to plead guilty (quoting *Miller*, 848 F.2d at 1322)). Accordingly, the court must consider objective factors to determine whether a reasonable defendant in the same circumstances as the petitioner would have pleaded not guilty and insisted on going to trial. *See Ostrander*, 46 F.3d at 356.

Cases from other jurisdictions provide useful guidance for evaluating whether there is a reasonable probability/possibility that, but for the failure to disclose exculpatory evidence, the defendant would have refused to plead guilty and would have insisted on going to trial. In particular, the Wisconsin Court of Appeals, which has adopted the same materiality inquiry for *Brady* claims based on withheld exculpatory evidence in the guilty-plea context, has developed the following list of factors to consider in applying the materiality test:

> (1) the relative strength and weakness of the State's case and the defendant's case; (2) the persuasiveness of the withheld evidence; (3) the reasons, if any, expressed by the defendant for choosing to plead guilty; (4) the benefits obtained by the defendant in exchange for the plea; and (5) the thoroughness of the plea colloquy.

*State v. Sturgeon*, 605 N.W.2d 589, 596 (Wis. Ct. App. 1999).[9] We agree that these are relevant considerations, but we also emphasize that this is not an exhaustive list and that "[t]he particular case may present other relevant considerations." *Id.* With these considerations in mind, we turn to the district court's decision in this case.

---

[9]Since *Sturgeon*, the Wisconsin Supreme Court has held, in light of the Supreme Court's decision in *Ruiz*, that "due process does not require the disclosure of material exculpatory impeachment information before a defendant enters into a plea bargain." *State v. Harris*, 680 N.W.2d 737, 741 (Wis. 2004). But the court declined an invitation to overrule *Sturgeon* and has not determined "whether due process requires the disclosure of purely exculpatory information prior to a plea bargain." *Id.* at 750 n.15.

*The district court's ruling in this case*

The district court concluded that the State withheld exculpatory evidence (the surveillance tapes) and that the evidence was material because its absence adversely affected trial counsel's "ability to provide a sound defense."[10] On appeal, the State has focused on the materiality component of the district court's decision. We do so as well and conclude that the evidence was not material.[11]

The relevant factors support the conclusion that Huebler failed to demonstrate a reasonable possibility that he would have refused to plead guilty and would have gone to trial if the surveillance tapes had been delivered to counsel before entry of the guilty plea.

---

[10]Huebler suggests that the district court also granted relief based on the State's alleged failure to disclose an audio-video recording of his police interview before entry of the plea. The district court's order does not mention this recording, and we are not convinced that the alleged failure to disclose this recording provides an alternative ground to affirm the district court's decision for three reasons. First, Huebler participated in the interview, and therefore, any *Brady* or ineffective-assistance-of-counsel claims related to the interview and the recording were reasonably available to be raised in a timely petition. Second, the interview was not exculpatory, and therefore, Huebler had no viable *Brady* claim or good-cause allegation based on the State's alleged failure to disclose the recording. And finally, even assuming the recording had any exculpatory value, Huebler failed to demonstrate it was material.

[11]Although the State's appeal focuses primarily on the materiality component of the district court's decision, a few observations are in order regarding the district court's decision on the other two components of Huebler's *Brady* claim: that the State withheld exculpatory evidence.

The district court determined that the evidence was exculpatory because it "fails to show the crime charged." It is not entirely clear that the tapes tend to establish Huebler's innocence because the victim indicated that Huebler touched her buttocks and vagina underwater and the tapes do not show what occurred underwater. The State questions the district court's description of the evidence as exculpatory in the context of its argument that the evidence is not material but does not argue that the evidence is not exculpatory and therefore there was no duty to disclose it. Because the State has not challenged the district court's decision that the evidence is exculpatory, that question is not presented here and we do not answer it.

The district court also determined that the evidence had been withheld by the State. It is not clear from the district court's order that it considered whether the surveillance videotapes could have been uncovered through diligent investigation by the defense. *See Steese v. State*, 114 Nev. 479, 495, 960 P.2d 321, 331 (1998) ("*Brady* does not require the State to disclose evidence which is available to the defendant from other sources, including diligent investigation by the defense."). There are some facts in the record to support such a conclusion. At the evidentiary hearing, Huebler's trial counsel acknowledged that she was informed of the existence of the surveillance videotapes prior to Huebler's guilty plea. Also, the police report, which Huebler's counsel acknowledged was in her possession, stated the name of the police detective to contact with questions relating to the collection of the videotapes. Again, because the State does not challenge the district court's decision that the evidence was withheld, we need not resolve this issue.

First, there was substantial evidence of Huebler's guilt given the victim's statements and Huebler's statements regarding touching the victim and past molestation allegations involving young girls. Second, the withheld evidence is not particularly persuasive; the surveillance tapes did not record any events underwater, and therefore, do not refute the victim's claims. Thus, as noted in the margin above, it is questionable whether the tapes were exculpatory at all. Third, the testimony presented at the evidentiary hearing demonstrated that Huebler insisted on entering a guilty plea. Trial counsel's testimony indicated that she told Huebler that they "needed to look at the discovery" before he pleaded guilty and that she told him why they needed to do that but that he insisted on moving forward with the guilty plea.[12] Fourth, Huebler received a benefit from entry of the guilty plea as the charges were reduced and any investigation into potential additional charges ended. Finally, Huebler indicated by signing the guilty plea agreement that he entered the plea voluntarily and knowingly. Based on these factors, it is clear that pre-plea disclosure of the surveillance tapes would not have caused him to refuse to plead guilty and instead insist on going to trial. Because Huebler fails to demonstrate materiality, he fails, as a matter of law, to demonstrate that any errors in the disclosure of the tapes prejudiced him. The petition therefore is procedurally barred pursuant to NRS 34.726(1). Accordingly, we reverse the district court's order.[13]

PICKERING, HARDESTY, and PARRAGUIRRE, JJ., and SHEARING, Sr. J., concur.

---

[12]We note that there was little time for counsel to obtain the requested videotapes. The charging document alleged that the offense occurred on or between July 27 and 29, 2003. The waiver of preliminary examination was filed approximately three weeks later, on August 19, 2003. Huebler was arraigned in district court and entered his guilty plea ten days later, on August 29, 2003. Thus, just more than four weeks elapsed between the last date on which the offense occurred and the entry of the guilty plea.

[13]Huebler suggests that the district court's decision can be affirmed based on a meritorious ineffective-assistance claim—that trial counsel was ineffective for failing to investigate and obtain a copy of the surveillance tapes. We disagree for two reasons. First, this claim could have been raised in a timely petition and Huebler failed to explain his delay. Second, even assuming that the claim was not reasonably available to be raised in a timely petition, Huebler cannot demonstrate prejudice. In this instance, the inquiry is the same as the materiality prong of the *Brady* claim: whether Huebler would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985); *see also Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (explaining that *Hill* standard applies when "a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial"). As explained in this opinion, Huebler failed to make that showing. For these reasons, Huebler's ineffective-assistance claim is procedurally barred under NRS 34.726.

CHERRY, J., with whom GIBBONS, J., agrees, dissenting:

The district court held that respondent Charles Huebler had demonstrated cause and prejudice to excuse the untimely filing of his post-conviction petition for a writ of habeas corpus based on a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that made his guilty plea involuntary and that Huebler therefore was entitled to withdraw his guilty plea. The court now concludes that even assuming that the evidence was withheld by the State and is exculpatory (two points that the court does not entirely embrace), Huebler failed to demonstrate that the evidence was material and therefore the district court's order must be reversed. I would conclude that the evidence is exculpatory and was withheld by the State, but then remand for the district court to apply the correct test for materiality (as set forth by the court).

I agree with the court that a *Brady* claim survives the entry of a guilty plea in that the State has a constitutional duty to disclose material exculpatory information that is within the State's possession before entering a plea agreement with a defendant. *See, e.g.*, *McCann v. Mangialardi*, 337 F.3d 782, 787-88 (7th Cir. 2003). I also find no fault in the court's articulation of the prejudice component of such a *Brady* claim, that withheld evidence is material if the defendant demonstrates a reasonable probability or possibility (depending on whether there was a specific request for evidence) that but for the failure to disclose the evidence he or she would have refused to plead guilty and would have insisted on going to trial. Where I must part company with my colleagues is in applying the three prongs of a *Brady* claim to the facts and circumstances presented in this case.

The starting point is whether the evidence at issue is exculpatory. The court suggests in the margin of its decision that the surveillance videotapes may not be exculpatory because the victim described the lewd acts as occurring underwater and the videotapes do not depict what occurred underwater. I cannot agree with this suggestion that the videotapes are not exculpatory. In my view, the videotapes tend to establish Huebler's innocence because they show appropriate interactions between an adult and child in a swimming pool and show no conduct or reactions on any individual's part that would suggest there had been any lewd or lascivious acts involving Huebler and the victim.

The next consideration is whether the State withheld the evidence. The court suggests, again in the margin of its decision, that certain facts in the record would support a conclusion that the evidence could have been uncovered by the defense through diligent investigation. While defense counsel may have been able to contact law enforcement to obtain the videotapes (the police report included the name of the detective who could be contacted with

questions related to the collection of the videotapes), the duty under *Brady* is the prosecutor's, and defense counsel had requested the videotapes and been told that the prosecutor would provide them to defense counsel (albeit at some later unspecified time after they had been provided to the prosecutor). *Cf. Jimenez v. State*, 112 Nev. 610, 620, 918 P.2d 687, 693 (1996) ("[E]ven if the detectives withheld their reports without the prosecutor's knowledge, 'the state attorney is charged with constructive knowledge and possession of evidence withheld by other state agents, such as law enforcement officers.'" (quoting *Gorham v. State*, 597 So. 2d 782, 784 (Fla. 1992))); *see also Allen v. State*, 854 So. 2d 1255, 1259 (Fla. 2003) (stating that "[t]he defendant's duty to exercise due diligence in reviewing *Brady* material applies only after the State discloses it" and therefore "[o]nce the State obtained the results of the hair analysis, it was required to disclose them to the defendant").

The final consideration is whether the evidence is material. On this point it is clear that the district court did not apply the correct test for materiality, focusing instead on the impact that the videotapes' absence had on defense counsel's "ability to provide a sound defense." Under the circumstances, I would remand for the district court to apply the correct test in the first instance. In my view, a remand is appropriate because many of the relevant factors involve factual and credibility determinations that should be made by the district court.

In sum, while I applaud the court's recognition that the State has a constitutional duty to disclose material exculpatory information within its possession before entering a plea agreement with a defendant, I cannot agree with its application of the law to this case. Rather, I agree with the district court that the evidence at issue is exculpatory and was withheld by the State and would remand for the district court to apply the correct test for materiality.

I must also comment on footnote 13 and the discussion preceding footnote 12 in the majority opinion. I have reviewed the transcript of the evidentiary hearing in the court below and the testimony provided at the hearing and it demonstrates both factually and legally why Huebler should have been allowed to withdraw his guilty plea and that the district court was correct in its ruling.

Trial counsel had defended clients charged with misdemeanors for only two weeks, and then began representing clients charged with felonies. She had less than one year of experience when she represented Huebler. This case was the first time counsel had represented a defendant charged with a sexual offense and the first time one of her clients faced a possible life sentence. The record further reveals that Huebler had attempted suicide, was on suicide watch, and was incredibly depressed. Huebler waived a preliminary hearing to plead to one count of lewdness, and the second

count would be dismissed. Counsel had requested discovery but did not receive either the video surveillance or video recording of Huebler's interrogation. Counsel knew these videos existed, but had not received them.

Counsel testified at the evidentiary hearing that if she had received these videos, she could have stopped Huebler from entering a plea. Even more enlightening is counsel's profound revelation that after she finally reviewed the tapes, she would have thrown herself into traffic to prevent Huebler's guilty plea.

Looking at the totality of circumstances in this contested matter, I would remand this case back to the district court to apply the correct test for materiality and for further hearings on whether Huebler can, in fact, show prejudice so that his ineffective assistance claim is not procedurally barred. In light of the Supreme Court's recent landmark decision emphasizing the importance of the right to effective assistance of counsel during plea bargaining, *see Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), it is imperative that the instant case be remanded to the trial court in order that a finding be made as to whether trial counsel, who allowed a plea to be entered without the benefit of crucial discovery, was ineffective.