# IN THE SUPREME COURT OF THE STATE OF NEVADA

CHARLES SHEA EUBANKS,
Appellant,
vs.
BRIAN WILLIAMS, WARDEN,
Respondent.

No. 80780

**FILED**

SEP 16 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Fifth Judicial District Court, Nye County; Robert W. Lane, Judge. Appellant Charles Shea Eubanks argues that the district court erred in denying his petition as procedurally barred without an evidentiary hearing. We affirm.

Eubanks filed the petition nearly three years after remittitur issued in his direct appeal. *Eubanks v. State*, Docket No. 64116 (Order of Affirmance, October 15, 2014). Thus, his petition was untimely filed. *See* NRS 34.726(1). The petition was also successive because he had previously litigated a postconviction petition for a writ of habeas corpus. *See* NRS 34.810(1)(b), (2); *Eubanks v. State*, Docket No. 68628 (Order of Affirmance, May 9, 2016). Eubanks' petition was procedurally barred absent a demonstration of good cause and actual prejudice. *See* NRS 34.726(1); NRS 34.810(1)(b), (3). Good cause "may be demonstrated by a showing that the factual or legal basis for a claim was not reasonably available" to be raised in a timely petition. *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003) (internal quotation marks omitted). Prejudice requires showing

21-26866

errors causing actual and substantial disadvantage. *State v. Huebler*, 128 Nev. 192, 197, 275 P.3d 91, 95 (2012). We defer to the district court's factual findings that are supported by substantial evidence and not clearly wrong, but review its application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

Eubanks argues that he has shown good cause and prejudice because the State violated *Brady v. Maryland*, 373 U.S. 83 (1963). We disagree. A *Brady* claim requires a showing that the evidence is favorable to the claimant, the State withheld the evidence, and the evidence was material. *Huebler*, 128 Nev. at 198, 275 P.3d at 95. When a *Brady* claim is raised in an untimely postconviction habeas petition, showing that evidence was withheld generally establishes good cause and that evidence was material generally establishes prejudice in order to overcome the procedural bar. *Id.* A *Brady* claim raised in an untimely postconviction habeas petition must be raised within a reasonable time after the discovery or disclosure of the withheld evidence. *Id.* at 198 n.3, 275 P.3d at 95 n.3; *see also Gray v. Netherland*, 518 U.S. 152, 162 (1996) (observing that a *Brady* claim could be procedurally barred when the petitioner knew of the grounds but did not raise it in the first state petition). When the defense specifically requested the withheld evidence, the evidence is material if there is a reasonable possibility that the result would have been different if the evidence had been disclosed. *Mazzan v. Warden*, 116 Nev. 48, 74, 993 P.2d 25, 41 (2000). However, when the defense did not request or only requested the withheld evidence generally, evidence is only material if there is a reasonable probability of a different outcome. *Id.* We review *Brady* claims de novo. *Id.* at 66, 993 P.2d at 36.



Eubanks first argues that the State withheld Detective Vitto's plan to testify favorably at Danny Jarvis's sentencing hearing. Jarvis was a jailhouse informant who testified that Eubanks boasted about the murder. The record belies that Vitto and Jarvis had an undisclosed arrangement. Each testified that Vitto had not promised Jarvis anything in exchange for his testimony, and Eubanks has not offered any evidence showing that a tacit deal was in place. *Cf. Akrawi v. Booker*, 572 F.3d 252, 262–64 (6th Cir. 2009) ("[T]he mere fact of favorable treatment received by a witness following cooperation is also insufficient to substantiate the existence of an agreement."). Eubanks has not shown that any evidence was withheld in this regard, and trial counsel was able to cross-examine Jarvis thoroughly on his motivations for testifying. Moreover, insofar as Eubanks argues that the existence of a deal could be inferred from the bare fact of Vitto's testifying favorably at Jarvis's hearing, such a claim on that ground was available to be raised in a timely petition because Jarvis was cross-examined at trial on his imminent sentencing, which occurred soon after and was a matter of public record. Eubanks has not shown a meritorious *Brady* claim in this regard and thus has not shown good cause. The district court therefore did not err in denying this claim without conducting an evidentiary hearing. *See Nika v. State*, 124 Nev. 1272, 1300-01, 198 P.3d 839, 858 (2008) (providing that a petitioner is entitled to an evidentiary hearing when the claims asserted are supported by specific factual allegations that are not belied or repelled by the record and that, if true, would entitle the petitioner to relief).

Eubanks next argues that the State withheld evidence that Karisma Garcia, Troy Jackson, and Jarvis had previously worked as

SUPREME COURT
OF ·
NEVADA

(O) 1947A

3

confidential informants in unrelated cases. Garcia was a jailhouse informant who testified that Eubanks admitted the murder to her. Jackson was Eubanks' coperpetrator who pleaded guilty. It appears the evidence as to Garcia and Jackson was not disclosed. The Jarvis claim is based on court minutes that are "matter[s] of public record that [were] not and could not be withheld by the State." *Rippo v. State*, 134 Nev. 411, 431-32, 423 P.3d 1084, 1103-04 (2018). Even if the Jarvis evidence had been withheld as well, the record shows that Eubanks did not specifically request this confidential-informant evidence, but only generally requested it, if at all. Accordingly, the evidence is material only if reasonably probable to lead to a different outcome.

The evidence was not material as to any of these three witnesses. That Jarvis had assisted law enforcement in unrelated cases would offer only minor additional impeachment value, as he was already thoroughly impeached and evidence of other instances of Jarvis's past cooperation with law enforcement was not relevant to his truthfulness. *See United States v. Hamaker*, 455 F.3d 1316, 1328-29 (11th Cir. 2006) (finding no *Brady* violation where the additional impeachment value to be gained from questioning a witness on his status as a confidential informant in an unrelated case was at best marginal); *Pyles v. Johnson*, 136 F.3d 986, 1000 (5th Cir. 1998) (concluding that evidence of additional informant activities would provide only incremental impeachment value that did not meet the level of *Brady* materiality). Likewise, trial counsel cross-examined Garcia and Jackson in pretrial depositions on their motives and agreements with the State to testify, Garcia's hoped-for benefit and Jackson's anticipation of none, and their criminal records. The confidential-informant evidence

would offer minor incremental impeachment value as to Garcia and Jackson, as each had already been impeached on related grounds and additional, unrelated informant experience would not bear on their truthfulness. Also, Jackson's testimony regarding the attack was corroborated by physical evidence and the accounts of other witnesses and participants.

Moreover, the incremental impeachment evidence was not material in light of the overwhelming evidence of Eubanks' guilt. That is, the record shows that (1) Eubanks confessed the murder to his girlfriend, four jailhouse informants, and two others who pleaded guilty to offenses related to the murder; (2) Eubanks' coperpetrator admitted to their crimes; (3) two children at the house where Eubanks fled after the killing described Eubanks throwing bags into a fire from which the murder weapons were later recovered; (4) the surviving victim's sister testified that Eubanks and his accomplices arrived at the house immediately before the murder and attempted murder; and (5) Eubanks admitted to the investigating detective that he went to the residence to rob the victims before the situation deteriorated when the victims had nothing of value. Eubanks has not shown meritorious *Brady* claims in these regards, and the district court therefore did not err in denying them as procedurally barred without conducting an evidentiary hearing.

Eubanks next argues that the State withheld evidence of a benefit that Andrew Kaufman received for his testimony. Kaufman was a jailhouse informant who testified that Eubanks admitted to committing murder and attempted murder. Kaufman testified in a pretrial deposition that, in exchange for his testimony, he expected the State to write a letter

SUPREME COURT
OF
NEVADA

(O) 1947A

5

to federal authorities on his behalf describing his assistance. The State acknowledged this agreement, and trial counsel cross-examined him on the matter. Subsequent to Eubanks' trial, Kaufman's sentence on a federal case was reduced. Eubanks has not shown any agreement or benefit that was withheld. Eubanks' claim that it was certain, not merely hoped for, that Kaufman would receive relief from his federal sentence—beyond the letter from the State describing his cooperation—is a bare claim unsupported by the record. As Eubanks has not shown a meritorious *Brady* claim in this regard, the district court did not err in denying it as procedurally barred.

Eubanks next argues that the State withheld evidence that his accomplice Victoria Garcia had testified against a codefendant in a previous unrelated case. Her prior testimony is a matter of public record that the State could not withhold. *Rippo*, 134 Nev. at 431-32, 423 P.3d at 1103-04. Even if it could have been withheld, noting that it was not specifically requested, there is not a reasonable probability that this evidence would have affected the outcome. Garcia drove Eubanks and Jackson to the surviving victim's residence where they committed the murder and the attempted murder. The fact that Garcia testified against a coperpetrator in an unrelated case was not material. Any motive to testify falsely would be illustrated by the lesser sentence she received for cooperation in this case and her relationship with Jackson—both of which were disclosed and elicited at trial. Moreover, whatever impeachment value this might offer is marginal in light of the overwhelming evidence of Eubanks' guilt and the corroboration of Garcia's testimony by physical evidence and other witnesses' testimony. Eubanks has not shown a meritorious *Brady* claim in

this regard, and the district court therefore did not err in denying it as procedurally barred without conducting an evidentiary hearing.

Eubanks next argues that the State withheld evidence of a conflict of interest in that the same attorney had represented Garcia and Jarvis and another had represented Garcia and another jailhouse informant. This evidence is neither favorable nor material. Eubanks does not allege that this created an actual conflict of interest adversely affecting *his* counsel's performance, *Leonard v. State*, 108 Nev. 79, 81, 824 P.2d 287, 289 (1992), and the mere fact of this representation does not bear on the truthfulness of their testimony. Further, it is not clear that the State possessed or withheld this evidence. Insofar as Eubanks suggests that these attorneys synced their clients' testimony against him, evidence of any such conspiracy is not within the State's possession and is mere speculation. Eubanks has not shown a meritorious *Brady* claim in this regard, and the district court therefore did not err in denying it as procedurally barred without conducting an evidentiary hearing.

Eubanks next argues that the State withheld evidence regarding contacts between witnesses while in custody. The witnesses were cross-examined in pretrial depositions on their contacts with one another while in custody, in transport, and in detention before court proceedings in this matter. The record thus belies that the State withheld any evidence in this regard. While Eubanks speculates that the witnesses may have collaborated on their accounts during these contacts, he has not alleged that the State possessed or withheld any actual evidence of any purported collaboration. Moreover, the evidence of the witnesses' contacts was not material. The record contains overwhelming evidence of Eubanks' guilt and

the allegedly withheld evidence offered only marginal additional impeachment value in light of the witnesses' impeachment by the substantial charging benefits each received or hoped to receive. Eubanks has not shown a meritorious *Brady* claim in this regard, and the district court therefore did not err in denying it as procedurally barred without conducting an evidentiary hearing.

Eubanks next argues that the cumulative impact of any withheld evidence would have affected the trial's outcome. We disagree. *See Lisle v. State*, 113 Nev. 540, 548, 937 P.2d 473, 478 (1997) (considering the cumulative effect of withheld evidence); *see also Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (providing that the "net effect" of undisclosed evidence should be considered in assessing materiality). Eubanks has identified only marginal additional impeachment evidence that was not specifically requested, even if the matters of public record are considered as well. Each of the witnesses addressed had already been impeached with evidence more probative of their motivation to testify truthfully in this matter and with their criminal records. In no instance does Eubanks put forward withheld impeachment evidence that contradicts any of these witnesses' accounts. Moreover, this incremental impeachment evidence is not material in light of the overwhelming evidence of Eubanks' guilt. Eubanks has not shown a meritorious *Brady* claim in this regard, and the district court therefore did not err in denying it as procedurally barred without conducting an evidentiary hearing.

Eubanks next argues that trial counsel provided ineffective assistance and that good cause exists to raise this claim in a second, untimely petition because he was not represented by counsel in the first

(O) 1947A

postconviction proceedings. But this court has determined the failure to appoint discretionary postconviction counsel in the first postconviction proceeding does not provide good cause. *Brown v. McDaniel*, 130 Nev. 565, 571, 331 P.3d 867, 871-72 (2014). Thus, the district court did not err in determining that there was no good cause to litigate these claims.

The State also pleaded laches. A petition may be dismissed if the delay in filing prejudices the State's ability to respond to the petition unless the petitioner could not have known of the grounds for the petition by the exercise of reasonable diligence. NRS 34.800(1)(a). A petition may also be dismissed if the delay prejudices the State's ability to retry the petitioner unless the petitioner shows a fundamental miscarriage of justice. NRS 34.800(1)(b). The district court found that the State showed prejudice on both of these prongs. Eubanks has not shown that the district court erred in determining that the petition was barred by laches. Eubanks' new *Brady* claims arose from an interview that counsel's investigator conducted with the witnesses. The record supports the district court's finding that these claims could have been timely raised with the exercise of reasonable diligence. *See* NRS 34.800(1)(a). And Eubanks did not demonstrate a fundamental miscarriage of justice, that he was actually innocent of the charges. *See* NRS 34.800(1)(b); *see also Berry v. State*, 131 Nev. 957, 974, 363 P.3d 1148, 1159 (2015) (recognizing that showing for fundamental miscarriage of justice for statutory laches is actual innocence). Eubanks has not overcome the findings of prejudice to the State.

We conclude that the district court therefore correctly applied the mandatory procedural bars and did not abuse its discretion in

SUPREME COURT
OF
NEVADA

(O) 1947A

determining the petition was barred by laches. *See State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 231, 233, 112 P.3d 1070, 1074-75 (2005).

Having considered Eubanks' contentions and concluded that they do not warrant relief, we

ORDER the judgment of the district court AFFIRMED.[1]

_____, C.J.
Hardesty

_____, J.       _____, Sr.J.
Stiglich                           Gibbons

cc:   Hon. Robert W. Lane, District Judge
      Federal Public Defender/Reno
      Federal Public Defender/Las Vegas
      Attorney General/Carson City
      Nye County District Attorney
      Nye County Clerk

_____

[1]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.