Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

State of Nebraska, appellee, v.
John L. Lotter, appellant.

___ N.W.2d ___

Filed September 28, 2018.    Nos. S-17-325, S-17-338,
S-17-339, S-17-1126, S-17-1127, S-17-1129.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a juris-
   dictional issue which does not involve a factual dispute is a matter of
   law which requires an appellate court to reach its conclusions indepen-
   dent from a trial court.
2. **Postconviction: Appeal and Error.** Whether a claim raised in a post-
   conviction proceeding is procedurally barred is a question of law. When
   reviewing a question of law, an appellate court resolves the question
   independently of the lower court's conclusion.
3. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court
   to acquire jurisdiction of an appeal, there must be a final judgment or
   final order entered by the tribunal from which the appeal is taken.
4. **Postconviction: Final Orders.** Within a postconviction proceeding,
   an order granting an evidentiary hearing on some issues and denying
   a hearing on others is a final, appealable order as to the claims denied
   without a hearing.
5. **Postconviction: Appeal and Error.** An order denying a postconvic-
   tion claim is appealable even when the court reserves ruling on other
   claims.
6. **Postconviction: Final Orders.** An order overruling a motion for post-
   conviction relief as to a claim is a "final judgment" as to such claim
   under Neb. Rev. Stat. § 29-3002 (Reissue 2016).
7. **Judgments: Final Orders: Time: Appeal and Error.** A party has 30
   days from the entry of a judgment or final order to appeal the decision
   of a district court unless a party has filed a timely motion which termi-
   nates the appeal period.
8. **Pleadings: Judgments: Appeal and Error.** A motion for reconsid-
   eration is the functional equivalent of a motion to alter or amend a

judgment, which terminates the period in which a party must file a notice of appeal.

9. **Pleadings: Judgments: Time: Appeal and Error.** In cases involving a motion to alter or amend a judgment, a critical factor is whether the motion was filed within 10 days of the final order, because a timely motion terminates the time for filing a notice of appeal.

10. **Courts: Judgments: Time: Appeal and Error.** A motion for reconsideration does not terminate the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment.

11. **Rules of the Supreme Court: Postconviction.** Postconviction proceedings are not governed by the Nebraska Court Rules of Pleading in Civil Cases.

12. **Pleadings: Time: Appeal and Error.** An untimely motion to alter or amend does not terminate the time for perfection of an appeal and does not extend or suspend the time limit for filing a notice of appeal.

13. **Legislature: Courts: Time: Appeal and Error.** When the Legislature fixes the time for taking an appeal, the courts have no power to extend the time directly or indirectly.

14. **Postconviction: Pleadings: Final Orders: Appeal and Error.** An order ruling on a motion filed in a pending postconviction case seeking to amend the postconviction motion to assert additional claims is not a final judgment and is not appealable under Neb. Rev. Stat. § 29-3002 (Reissue 2016).

15. **Final Orders: Time: Appeal and Error.** To trigger the savings clause for premature notices of appeal under Neb. Rev. Stat. § 25-1912(2) (Reissue 2016), an announcement must pertain to a decision or order that, once entered, would be final and appealable.

16. **Postconviction: Pleadings: Time.** The Nebraska Postconviction Act contains a 1-year time limit for filing a verified motion for postconviction relief, which runs from one of four triggering events or August 27, 2011, whichever is later.

17. **Sentences.** *Hurst v. Florida*, ___ U.S. ___, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016), merely applied *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), and did not set forth a new rule of law for sentencing.

18. **Constitutional Law: Courts.** Constitutional rights are not defined by inferences from opinions which did not address the question at issue.

19. **Sentences: Time: Appeal and Error.** *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002), announced a new procedural rule that does not apply retroactively to cases already final on direct review.

Appeals from the District Court for Richardson County: Daniel E. Bryan, Jr., Judge, Retired, and Vicky L. Johnson, Judge. Appeals in Nos. S-17-325, S-17-338, and S-17-339 dismissed. Judgment and final order in Nos. S-17-1126, S-17-1127, and S-17-1129 affirmed.

Timothy S. Noerrlinger, of Naylor & Rappl, and Rebecca E. Woodman for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith for appellee.

Brian William Stull, of American Civil Liberties Union Foundation, and Amy A. Miller, of American Civil Liberties Union of Nebraska Foundation, for amici curiae American Civil Liberties Union Capital Punishment Project and American Civil Liberties Union of Nebraska Foundation.

Heavican, C.J., Cassel, Stacy, Funke, and Papik, JJ., and Bishop and Welch, Judges.

Cassel, J.

## I. INTRODUCTION

In identical, successive postconviction motions filed in three cases, John L. Lotter sought relief based on a 2016 U.S. Supreme Court decision[1] and on a death qualification issue. In separate orders filed months apart, the district court denied relief on each issue. Because Lotter did not timely appeal the denials of the death qualification issue, we lack jurisdiction over those appeals. We affirm the denials of the other claim as time barred, because the decision he relies upon is not a "newly recognized right [that] has been made applicable retroactively to cases on postconviction collateral review."[2]

---

[1] *Hurst v. Florida*, ___ U.S. ___, 136 S. Ct. 616, 193 L. Ed. 2d 504 (2016).
[2] Neb. Rev. Stat. § 29-3001(4)(d) (Reissue 2016).

## II. BACKGROUND

### 1. Convictions and Sentencing

Lotter's crimes are well known, and the underlying facts are set forth in our decision on Lotter's direct appeal.[3] In three separate cases against Lotter which were consolidated for trial, a jury convicted him of several crimes, including three counts of first degree murder. In accordance with the laws in effect at the time of his trial, a three-judge panel convened in February 1996 to determine whether Lotter should be sentenced to death. The panel found the applicability of three aggravating circumstances beyond a reasonable doubt and imposed the death penalty.

A criminal conviction is final for purposes of collateral review when the judgment of conviction is rendered, the availability of appeal is exhausted, and the time for petition for certiorari has lapsed.[4] Lotter's convictions became final in 1999.[5]

### 2. Key U.S. Supreme Court Sixth Amendment Cases

#### (a) *Apprendi v. New Jersey*

In 2000, the U.S. Supreme Court decided *Apprendi v. New Jersey*,[6] a landmark decision with respect to Sixth Amendment jurisprudence. In that case, a hate crime statute authorized an increase in the prescribed statutory maximum sentence based on a judge's finding by a preponderance of the evidence that the defendant acted with purpose to intimidate the victim

---

[3] See *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999).

[4] *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003) (superseded in part by statute as stated in *State v. Harris*, 292 Neb. 186, 871 N.W.2d 762 (2015)).

[5] See *id.*

[6] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

based on the particular circumstances of the victim. The trial judge concluded that the defendant had been motivated by racial bias, and in accordance with the statute, the judge increased the defendant's sentence.

The *Apprendi* Court addressed whether a judge, rather than a jury, could find facts that increased the defendant's maximum sentence. The Court determined that the statute violated the Due Process Clause of the 14th Amendment and the 6th Amendment right to trial by jury. It declared:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."[7]

### (b) *Ring v. Arizona*

Two years after *Apprendi*, the U.S. Supreme Court decided *Ring v. Arizona*.[8] *Ring* applied the *Apprendi* rule to capital sentencing schemes and determined that capital defendants are entitled to a jury determination of any fact that would increase the possible maximum punishment. The Court held, "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,' . . . the Sixth Amendment requires that they be found by a jury."[9] *Ring*

---

[7] *Id.*, 530 U.S. at 490 (quoting *Jones v. United States*, 526 U.S. 227, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999) (Stevens, J., concurring) (Scalia, J., concurring)).

[8] *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

[9] *Id.*, 536 U.S. at 609.

explicitly overruled one of its prior cases "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty."[10]

### (c) *Hurst v. Florida*

On January 12, 2016, the U.S. Supreme Court filed its decision in *Hurst v. Florida*.[11] In that case, the Court considered the constitutionality of Florida's capital sentencing scheme in light of *Ring*. Under Florida law, a jury renders an "'advisory sentence'" of life or death without specifying a factual basis for its recommendation and then the court, notwithstanding the jury's recommendation, weighs the aggravating and mitigating circumstances and enters a sentence of life imprisonment or death.[12] Thus, the trial court alone makes the findings necessary for imposition of a death sentence—that "'sufficient aggravating circumstances exist'" and that "'there are insufficient mitigating circumstances to outweigh the aggravating circumstances.'"[13] In holding the sentencing scheme unconstitutional, the Court declared that "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death."[14] The *Hurst* Court stated that "Florida's sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional."[15]

### 3. Nebraska's Capital Sentencing Scheme

At the time of Lotter's convictions and sentences, Nebraska law provided that after a defendant was found guilty of first

---

[10] *Id.*

[11] *Hurst v. Florida, supra* note 1.

[12] *Id.*, 136 S. Ct. at 620.

[13] *Id.*, 136 S. Ct. at 622.

[14] *Id.*, 136 S. Ct. at 619.

[15] *Id.*, 136 S. Ct. at 624.

degree murder, a trial judge or a three-judge panel determined whether statutory aggravating circumstances existed.[16] If such circumstances existed, the defendant faced a maximum penalty of death.[17] If aggravating circumstances did not exist, the defendant faced a maximum penalty of life imprisonment. *Ring* invalidated this procedure.

In response to *Ring*, the Nebraska Legislature enacted L.B. 1,[18] which amended Nebraska's capital sentencing statutes. The new law required that a jury determine the existence of aggravating circumstances, unless a jury is waived by the defendant.[19] It specifically stated that each aggravating circumstance needed to be proved by the State beyond a reasonable doubt.[20] If the jury rendered a verdict finding the existence of one or more aggravating circumstances, a panel of three judges would determine the sentence.[21] The panel of judges was to consider whether the aggravating circumstances as determined to exist justified imposition of a death sentence, whether mitigating circumstances existed which approached or exceeded the weight given to the aggravating circumstances, or whether the sentence of death was excessive or disproportionate to the penalty imposed in similar cases.[22] Nothing in the legislative response dictated that it would apply to sentences which had already become final upon completion of direct review.[23]

### 4. FOURTH POSTCONVICTION MOTION PROCEEDINGS

Exactly 1 year after the *Hurst* decision, Lotter filed in each case a fourth motion for postconviction relief. He set forth two

---

[16] Neb. Rev. Stat. §§ 29-2520 to 29-2524 (Reissue 1995).

[17] Neb. Rev. Stat. §§ 28-105 and 28-303 (Reissue 1995).

[18] See 2002 Neb. Laws, L.B. 1.

[19] See § 29-2520(2) (Reissue 2008).

[20] See § 29-2520(4)(e) and (f).

[21] § 29-2521(1) and (3) (Reissue 2008).

[22] § 29-2522 (Reissue 2008).

[23] See L.B. 1.

grounds for relief. Lotter first alleged that Nebraska's capital sentencing scheme was unconstitutional in light of *Hurst* (claim 1). Second, Lotter alleged that the death qualification of the jury violated his rights under the 8th and 14th Amendments (claim 2).

The district court promptly conducted a "preliminary review" to determine whether an evidentiary hearing should be granted. On January 17, 2017, the court entered an order denying claim 2 as being procedurally barred. The court neither granted nor denied an evidentiary hearing on claim 1. The pertinent portion of the court's order is as follows:

Lotter's claim for post-conviction relief on **Claim 1** is presently set for briefing from the State of Nebraska before this court determines whether a hearing is required. . . . Upon submission of the briefs, this court will determine if any further hearings will be necessary.

Lotter's claim for post-conviction relief on **Claim 2**[] is denied. Lotter's request to reverse his convictions are [sic] denied.

On Friday, January 27, 2017, the district court held a hearing concerning a mandate in a previous postconviction proceeding. During the hearing, Lotter's counsel asked how to proceed with asking the court to reconsider its denial of claim 2. Counsel expressed concern that "if we file a motion for reconsideration within 10 days, there's a potential that that can be construed as a final judgment in the case and so the issues would be bifurcated and we would have to litigate this piecemeal." The court suggested that the "best path" may be to file a motion for reconsideration which "should hold it in abeyance."

On Monday, January 30, 2017, Lotter filed a "Motion for Reconsideration and to Hold in Abeyance." In the motion, Lotter asked the court to reconsider its ruling on claim 2 and to hold the motion in abeyance for hearing and decision together with the hearing and decision on claim 1. He asserted that before claim 2 is disposed of, the court should allow briefing

on whether cause existed to excuse any procedural default. Lotter further stated that "[i]n an abundance of caution, this motion is being filed in accordance with the provisions for filing a motion to alter or amend judgment under Neb. Rev. Stat. § 25-1329 [(Reissue 2016)]."

Before the district court ruled on Lotter's motion for reconsideration, Lotter filed a motion for leave to amend his postconviction motion. He sought to add an additional claim, which would allege that his direct appeal counsel was constitutionally ineffective for failing to challenge the death qualification of his jury and that his initial postconviction counsel had an actual conflict of interest which precluded counsel from asserting a claim based on ineffective assistance of direct appeal counsel (claim 3).

On February 22, 2017, the district court entered an order denying Lotter's motion for reconsideration and denying the motion for leave to amend. Identical orders were filed in each case.

On March 22, 2017, Lotter filed a notice of appeal in each case, which were docketed in this court as cases Nos. S-17-325, S-17-338, and S-17-339 (first appeal). The State moved for summary dismissal, asserting lack of jurisdiction. We overruled the motion but reserved the jurisdictional issue until plenary submission of the appeals.

On September 28, 2017, the district court denied relief on claim 1 without an evidentiary hearing. The court determined that the claim was time barred, because *Hurst* did not create a newly recognized right. The court also concluded that neither *Hurst* nor *Ring* were retroactive on collateral review. Identical orders were filed in each case. Lotter, in turn, filed a timely appeal in each case, and those appeals have been docketed in this court as cases Nos. S-17-1126, S-17-1127, and S-17-1129 (second appeal).

On our own motion, we consolidated the appeals in the first appeal with the appeals in the second appeal for purposes of oral argument and disposition.

## III. ASSIGNMENTS OF ERROR

In the first appeal, Lotter assigns that the district court erred in (1) finding that claim 2 was procedurally defaulted, (2) finding that the postconviction motion could not be amended, and (3) determining the merits of claim 2 and claim 3 without an evidentiary hearing.

In the second appeal, Lotter assigns no error to an action by the district court. Rather, he assigns that (1) the Nebraska capital sentencing scheme violates *Hurst* and the 6th and 14th Amendments, (2) Nebraska's capital sentencing scheme allowing a three-judge panel to impose a death sentence violates the 8th Amendment, and (3) this court has jurisdiction over Lotter's appeal from the denial of claim 2 and claim 3.

## IV. STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.[24]

[2] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court resolves the question independently of the lower court's conclusion.[25]

## V. ANALYSIS

### 1. JURISDICTION IN FIRST APPEAL

We begin by addressing the jurisdictional issue raised by the State in its motion for summary dismissal. The State claimed that Lotter's appeal from the denial of claim 2 was untimely and that his notice of appeal from the denial of his motion to amend to add claim 3 was premature. Thus, the State contends that we lack jurisdiction over the first appeal.

---

[24] *State v. Coble*, 299 Neb. 434, 908 N.W.2d 646 (2018).

[25] *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018).

### (a) General Principles

[3-6] For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.[26] It is well established that within a postconviction proceeding, an order granting an evidentiary hearing on some issues and denying a hearing on others is a final, appealable order as to the claims denied without a hearing.[27] An order denying a postconviction claim is appealable even when the court reserves ruling on other claims.[28] It is appealable because an order overruling a motion for postconviction relief as to a claim is a "final judgment" as to such claim under Neb. Rev. Stat. § 29-3002 (Reissue 2016).[29]

[7-9] A party has 30 days from the entry of a judgment or final order to appeal the decision of a district court unless a party has filed a timely motion which terminates the appeal period.[30] A motion for reconsideration is the functional equivalent of a motion to alter or amend a judgment, which terminates the period in which a party must file a notice of appeal.[31] In cases involving a motion to alter or amend a judgment, a critical factor is whether the motion was filed within 10 days of the final order, because a timely motion terminates the time for filing a notice of appeal.[32]

---

[26] *State v. Hudson*, 273 Neb. 42, 727 N.W.2d 219 (2007).

[27] See, *State v. Determan*, 292 Neb. 557, 873 N.W.2d 390 (2016); *State v. Alfredson*, 287 Neb. 477, 842 N.W.2d 815 (2014); State *v. Robinson*, 287 Neb. 606, 843 N.W.2d 672 (2014); *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011); *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011); *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004).

[28] See, *State v. Determan, supra* note 27; *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998).

[29] See *State v. Hudson, supra* note 26.

[30] See Neb. Rev. Stat. § 25-1912 (Reissue 2016).

[31] See *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017).

[32] See *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013).

### (b) Lotter's Arguments

Lotter advances two reasons to support his contention that his appeal as to the denial of claim 2 was timely. He also argues that we have jurisdiction over claim 3. We address the arguments separately.

### (i) Motion Was Not Timely

[10] Lotter's motion, filed 13 days after the district court denied Lotter's claim 2, did not terminate or extend the time to appeal that denial. A motion for reconsideration does not terminate the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment.[33] In some contexts, a motion for reconsideration may also be treated as a motion to alter or amend a judgment for purposes of terminating the appeal period under Neb. Rev. Stat. § 25-1329 (Reissue 2016).[34] In order to qualify for treatment as a motion to alter or amend a judgment, a motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek substantive alteration of the judgment.[35] Here, the motion did not terminate the time for an appeal, whether characterized as a motion for reconsideration (which does not terminate the time for appeal) or a motion to alter of amend (which must be filed within 10 days in order to terminate the appeal time).

Lotter contends that his motion was timely under the circumstances. He asserts that when the court advised him to file a motion for reconsideration, the court enlarged the time for filing the motion for reconsideration as authorized under Neb. Ct. R. Pldg. § 6-1106(b)(1). Lotter quotes the following part of § 6-1106(b):

---

[33] See *Kinsey v. Colfer, Lyons*, 258 Neb. 832, 606 N.W.2d 78 (2000).

[34] *County of Douglas v. Nebraska Tax Equal. & Rev. Comm.*, 296 Neb. 501, 894 N.W.2d 308 (2017).

[35] *State v. Bellamy*, 264 Neb. 784, 652 N.W.2d 86 (2002).

When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order[.]

But we conclude the rule is inapplicable for two primary reasons.

[11] First, the rule of pleading that Lotter relies upon does not apply to this proceeding. Postconviction proceedings are not governed by the Nebraska Court Rules of Pleading in Civil Cases.[36]

[12,13] Second, even if the rule did apply, the pertinent statute does not allow for an extension of time. Lotter's discussion of the rule omitted the portion of § 6-1106(b) stating that "[t]he court may not extend the time for taking any action specified in any statute, except to the extent and under the conditions stated in the statutes." Section 25-1329 mandates that "[a] motion to alter or amend a judgment shall be filed no later than ten days after the entry of the judgment."[37] An untimely motion to alter or amend does not terminate the time for perfection of an appeal and does not extend or suspend the time limit for filing a notice of appeal.[38] Allowing an untimely motion to alter or amend would have the effect of extending the time for filing an appeal. But when the Legislature fixes the time for taking an appeal, the courts have no power to extend the time directly or indirectly.[39]

Lotter's motion did not terminate the time for filing an appeal from the January 17, 2017, order. The appeal time expired 30 days after the entry of the order. Thus, the notice

---

[36] *State v. Robertson*, 294 Neb. 29, 881 N.W.2d 864 (2016).

[37] § 25-1329.

[38] See *Fitzgerald v. Fitzgerald, supra* note 32.

[39] *State v. Marshall*, 253 Neb. 676, 573 N.W.2d 406 (1998).

of appeal filed on March 22 was not timely to challenge the denial of claim 2.

### (ii) Order Was Not New Judgment

Lotter next argues that the February 22, 2017, order substantially altered the January 17 order and constituted a new judgment. The February order accomplished two things. First, it denied Lotter's motion for reconsideration of the denial of claim 2. Second, it denied Lotter's motion for leave to amend his postconviction motion to add claim 3. Because Lotter filed a notice of appeal within 30 days of that order, he contends his appeal is timely as to both claim 2 and claim 3. We consider each.

### a. Claim 2

Lotter claims that the February order substantively altered its previous order, because it ruled on the merits of claim 2. The court stated that it denied claim 2 "for reasons set out in its January 17 . . . order" and that it denied the motion for reconsideration of that ruling. Thus, the February order did not alter the court's reasons for its denial of claim 2. To the extent the court discussed whether claim 2 had any merit, it did so in the context of ruling on the motion for leave to amend to add claim 3. We conclude Lotter's appeal as to claim 2 was not timely. The court's February order, which denied Lotter's untimely motion to alter or amend the judgment, was itself not an appealable order.[40]

### b. Claim 3

Lotter also argues that we have jurisdiction over claim 3, the claim that the court denied leave to add. To the extent his argument applies to the first appeal, we disagree.

[14] An order ruling on a motion filed in a pending postconviction case seeking to amend the postconviction motion to assert additional claims is not a final judgment and is not

---

[40] See *Mason v. Cannon*, 246 Neb. 14, 516 N.W.2d 250 (1994).

appealable under § 29-3002.[41] We have explained that the overruling of a motion for leave to amend in order to add a claim is not a ruling on the merits of the proposed claim, but, rather, is an order precluding the assertion of an additional claim.[42] At the time the court denied leave to amend, Lotter's claim 1 remained pending. Under the general rule, the denial of Lotter's motion to amend was not a final judgment.

Lotter also argues that we have jurisdiction because the district court ruled on the merits of claim 3. In declining to allow the motion for leave to amend, the court provided three reasons. The first reason was that the motion to amend was filed after the court already denied claim 2. Second, the court stated that claim 3 would be time barred. Third, the court stated that claim 3 was a "derivative claim" based on claim 2 and that the court could have easily denied claim 2 on its merits. But the court's discussion touching on the merits of claim 2 and, thus, claim 3 was mere surplusage. After the court determined that claim 2 was procedurally barred, it was unnecessary for the court to engage in any further analysis as to whether the claim would otherwise have merit. This surplusage does not create jurisdiction.

[15] Lotter argues that we have jurisdiction because his premature notice of appeal as to claim 3 related forward to the date of entry of the final judgment. But this argument depends upon Lotter's assertion that the court decided the merits of claim 3. It is true that § 25-1912(2) provides:

> A notice of appeal or docket fee filed or deposited after the announcement of a decision or final order but before the entry of the judgment, decree, or final order shall be treated as filed or deposited after the entry of the judgment, decree, or final order and on the date of entry.

However, "to trigger the savings clause for premature notices of appeal under § 25-1912(2), an announcement must pertain

---

[41] *State v. Hudson, supra* note 26.

[42] See *id.*

to a decision or order that, once entered, would be final and appealable."[43] Because the court did not reach the merits of claim 3, its February 22, 2017, order did not announce a "decision or final order" within the meaning of § 25-1912(2).

At this point, we recognize that our analysis in *State v. Robertson*[44] does not directly apply in this situation. There, the court considered amendment in the context of a timely filed motion to alter or amend a judgment. Moreover, the motion there was filed after an order disposing of all of the defendant's postconviction claims, all of which were premised on ineffective assistance of counsel. Here, Lotter's motion for leave to amend was filed in connection with a motion that could not be considered as a timely motion to alter or amend a judgment. Further, claim 1 remained pending. Under this circumstance, the general rule applies. It necessarily follows that our jurisdiction regarding the denial of amendment to assert claim 3 lies only in the context of the second appeal following the entry of judgment disposing of claim 1.

For all of the above reasons, we lack jurisdiction over the first appeal. Therefore, we do not consider any arguments directed to the merits of claim 2.

## 2. Second Appeal

### (a) Refusal to Allow
### Addition of Claim 3

Our disposition of the first appeal naturally leads to the conclusion that in the second appeal, we have jurisdiction of the denial of leave to amend to add claim 3. But in Lotter's appellate brief, he did not assign error to the denial of that motion. As we have said many times, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate

---

[43] *Lindsay Internat. Sales & Serv. v. Wegener*, 297 Neb. 788, 795, 901 N.W.2d 278, 282 (2017).

[44] *State v. Robertson, supra* note 36.

court.[45] Because Lotter's brief in the second appeal failed to assign error to the denial of the motion for leave to amend, we decline to address the argument.

### (b) Merits of Claim 1

The crux of the second appeal concerns the district court's denial of claim 1. Lotter argues that Nebraska's capital sentencing scheme is unconstitutional under the 6th, 8th, and 14th Amendments to the U.S. Constitution and under *Hurst*. But we will not resolve his arguments if his motion is time barred under § 29-3001(4).

[16] The Nebraska Postconviction Act contains a 1-year time limit for filing a verified motion for postconviction relief, which runs from one of four triggering events or August 27, 2011, whichever is later.[46] The triggering events are:

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review[.][47]

Lotter claims that his motion is not time barred, because it was filed within 1 year of the *Hurst* decision. Thus,

---

[45] See *State v. McGuire, supra* note 25.

[46] *State v. Harrison*, 293 Neb. 1000, 881 N.W.2d 860 (2016).

[47] § 29-3001(4).

Lotter appears to be relying on the triggering event found in § 29-3001(4)(d). But *Hurst* will save Lotter's otherwise untimely motion only if it initially recognized a constitutional claim and that newly recognized right is applicable retroactively to cases on collateral review. And his argument based on the Eighth Amendment can be timely only to the extent it is based on *Hurst*.

[17] We do not read *Hurst* as announcing a new rule of law. Rather, *Hurst* applied the analysis of *Ring* to Florida's sentencing scheme. In the introductory paragraph of *Hurst*, the Court stated that Florida's sentencing scheme was unconstitutional because: "The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough."[48] The Court stated that it "granted certiorari to resolve whether Florida's capital sentencing scheme violates the Sixth Amendment in light of *Ring*."[49] It later declared that "[t]he analysis the *Ring* Court applied to Arizona's sentencing scheme applies equally to Florida's."[50] The *Hurst* Court stated, "In light of *Ring*, we hold that [the defendant's] sentence violates the Sixth Amendment."[51] And the Court overruled two of its prior decisions "to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty."[52] The opinion concluded by stating that "Florida's sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional."[53] In our view, *Hurst* merely applied *Ring* and did not set forth a new rule of law for sentencing.

---

[48] *Hurst v. Florida, supra* note 1, 136 S. Ct. at 619.

[49] *Id.*, 136 S. Ct. at 621.

[50] *Id.*, 136 S. Ct. at 621-22.

[51] *Id.*, 136 S. Ct. at 622.

[52] *Id.*, 136 S. Ct. at 624.

[53] *Id.*

We are not persuaded by Lotter's and amici's attempt to distinguish *Hurst* from *Ring*. Lotter and amici contend that *Ring* was limited to the Sixth Amendment jury trial right and identity of the fact finder, while *Hurst* also implicates the proof beyond a reasonable doubt requirement. Lotter maintains that *Hurst* clarified the weighing of facts in aggravation and mitigation must be made by a jury. Lotter and amici read too much into *Hurst*.

[18] The analysis in *Hurst* made fleeting references to the burden of proof and weighing of aggravating and mitigating circumstances. The analysis began by citing *Alleyne v. United States*[54] for the proposition that the Sixth Amendment right to trial by jury, "in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt."[55] Then, in rejecting an argument made by Florida, the Court recognized that under the Florida sentencing statute, "[t]he trial court *alone* must find 'the facts . . . [t]hat sufficient aggravating circumstances exist' and '[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances.'"[56] We cannot transform these isolated references in the majority's analysis into a holding that a jury must find beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances. The *Hurst* Court said no such thing. "Constitutional rights are not defined by inferences from opinions which did not address the question at issue."[57] Like *Ring*, the *Hurst* decision focused on the jury's role in finding an aggravating circumstance. Later, the author of *Hurst* essentially said as much: "In *Hurst v. Florida*, . . . we held that process, 'which required the judge

---

[54] *Alleyne v. United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013).

[55] *Hurst v. Florida, supra* note 1, 136 S. Ct. at 621.

[56] *Id.*, 136 S. Ct. at 622 (emphasis in original).

[57] *Texas v. Cobb*, 532 U.S. 162, 169, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001).

alone to find the existence of an aggravating circumstance,' to be unconstitutional."[58]

Most federal[59] and state[60] courts agree that *Hurst* did not hold a jury must find beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances. The 10th Circuit aptly observed: "[T]he Supreme Court's holding in *Hurst* only referenced the [finding of aggravating circumstances] . . . . The Court thus did not address whether the second of the required findings—that mitigating circumstances do not outweigh the aggravating circumstances—is also subject to *Apprendi*'s rule."[61] This view is not universal.[62] One opinion expressing a contrary view called the meaning of *Hurst* "contestable."[63] But we see no ambiguity. The plain language of *Hurst* reveals no holding that a jury must find beyond a reasonable doubt that the aggravating factors outweigh the mitigating circumstances. And this court has previously concluded that neither *Apprendi* nor *Ring* require that the determination of mitigating circumstances, the balancing

---

[58] *Truehill v. Florida*, ___ U.S. ___, 138 S. Ct. 3, 4, 199 L. Ed. 2d 272 (2017) (Sotomayor, J., dissenting from denial of certiorari; Ginsburg and Breyer, JJ., join).

[59] See, *Underwood v. Royal*, 894 F.3d 1154 (10th Cir. 2018); *Runyon v. U.S.*, 228 F. Supp. 3d 569 (E.D. Va. 2017); *Garza v. Ryan*, No. CV-14-01901-PHX-SRB, 2017 WL 105983 (D. Ariz. Jan. 11, 2017) (unpublished decision).

[60] See, e.g., *Ex Parte Bohannon*, 222 So. 3d 525 (Ala. 2016), *cert. denied* ___ U.S. ___, 137 S. Ct. 831, 197 L. Ed. 2d 72 (2017); *Leonard v. State*, 73 N.E.3d 155 (Ind. 2017); *Evans v. State*, 226 So. 3d 1 (Miss. 2017), *cert. denied* ___ U.S. ___, 138 S. Ct. 2567, ___ L. Ed. 2d ___ (2018); *Jeremias v. State*, 412 P.3d 43 (Nev. 2018); *State v. Mason*, No. 2017-0200, slip op. 2018 Ohio 1462, 2018 WL 1872180 (Ohio Apr. 18, 2018).

[61] *Underwood v. Royal, supra* note 59, 894 F.3d at 1184.

[62] See, e.g., *Rauf v. State*, 145 A.3d 430 (Del. 2016); *Smith v. Pineda*, No. 1:12-cv-196, 2017 WL 631410 (S.D. Ohio Feb. 16, 2017) (unpublished decision).

[63] *Rauf v. State, supra* note 62, 145 A.3d at 435 (Strine, C.J., concurring; Holland and Seitz, JJ., join).

function, or the proportionality review be undertaken by a jury.[64]

[19] Even if we found that *Hurst* did announce a new law, it would not apply retroactively to Lotter. As we concluded above, *Hurst* merely applied *Ring*. And it is well established that *Ring* does not apply retroactively to cases on collateral review. The U.S. Supreme Court declared that "*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."[65] And in one of Lotter's previous postconviction appeals, we explained in great detail why *Ring* did not apply retroactively to his case.[66]

Likewise, *Hurst* has no retroactive application to cases on collateral review. Because *Hurst* is tethered to *Ring*, we see no reason why *Hurst* would apply retroactively on collateral review when *Ring* does not. In considering an identical issue raised in Lotter's petition for habeas corpus, the Nebraska federal district court reached the same conclusion.[67] Lotter appealed that decision, but the Eighth Circuit denied his application for a certificate of appealability[68] and the U.S. Supreme Court denied his petition for certiorari.[69] We observe that several federal circuit courts of appeal have found that *Hurst* does not apply retroactively to cases on collateral review.[70]

---

[64] See *State v. Gales*, 265 Neb. 598, 658 N.W.2d 604 (2003).

[65] *Schriro v. Summerlin*, 542 U.S. 348, 358, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

[66] *State v. Lotter, supra* note 4.

[67] *Lotter v. Britten*, 4:04CV3187, 2017 WL 744554 (D. Neb. Feb. 24, 2017) (unpublished decision).

[68] *Lotter v. Britten*, case No. 17-2000, 2017 WL 5015176 (8th Cir. July 31, 2017) (unpublished decision).

[69] *Lotter v. Frakes*, ___ U.S. ___, 138 S. Ct. 926, 200 L. Ed. 2d 205 (2018).

[70] See, *Rhines v. Young*, 899 F.3d 482 (8th Cir. 2018); *In re Coley*, 871 F.3d 455 (6th Cir. 2017); *Ybarra v. Filson*, 869 F.3d 1016 (9th Cir. 2017); *Lambrix v. Secretary, Florida Dept. of Corrections*, 851 F.3d 1158 (11th Cir. 2017), *cert. denied* ___ U.S. ___, 138 S. Ct. 217, 199 L. Ed. 2d 142; *In re Jones*, 847 F.3d 1293 (10th Cir. 2017).

Other federal courts agree.[71] Most state courts have reached the same conclusion.[72] And we are not swayed by Delaware's decision to give retroactive effect to *Rauf v. State*,[73] its opinion interpreting *Hurst*.[74]

Although Lotter filed his motion for postconviction relief within 1 year of the *Hurst* decision, that decision is not a "newly recognized right [that] has been made applicable retroactively to cases on postconviction collateral review."[75] Accordingly, Lotter's claim 1 is time barred.

## VI. CONCLUSION

We conclude that we lack jurisdiction over Lotter's first appeal. Because we agree with the district court that the claim raised in Lotter's second appeal is barred by the limitation period set forth in § 29-3001 and that subsection (4)(d) does not extend the limitation period, we affirm the court's decision.

Appeals in Nos. S-17-325, S-17-338, and S-17-339 dismissed.

Judgment and final order in Nos. S-17-1126, S-17-1127, and S-17-1129 affirmed.

Miller-Lerman and Freudenberg, JJ., not participating.

---

[71] See, *Taylor v. Dunn*, No. 14-0439-WS-N, 2018 WL 575670 (S.D. Ala. Jan. 25, 2018) (unpublished decision); *Styers v. Ryan*, No. CV-12-02332-PHX-JAT, 2017 WL 3641454 (D. Ariz. Aug. 24, 2017) (unpublished decision); *Gapen v. Robinson*, No. 3:08-cv-280, 2017 WL 3524688 (S.D. Ohio Aug. 15, 2017) (unpublished decision).

[72] See, *Reeves v. State*, 226 So. 3d 711 (Ala. Crim. App. 2016), *cert. denied* ___ U.S. ___, 138 S. Ct. 22, 199 L. Ed. 2d 341 (2017); *Hitchcock v. State*, 226 So. 3d 216 (Fla. 2017), *cert. denied* ___ U.S. ___, 138 S. Ct. 513, 199 L. Ed. 2d 396; *State v. Jackson*, No. 2017-T-0041, slip op. 2018 Ohio 2146, 2018 WL 2676465 (Ohio App. June 4, 2018) (unpublished decision).

[73] *Rauf v. State, supra* note 62.

[74] See *Powell v. Delaware*, 153 A.3d 69 (Del. 2016).

[75] § 29-3001(4)(d).