135 Nev., Advance Opinion 16

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WILLIAM P. CASTILLO,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 73465<br><br>**FILED**<br><br>MAY 30 2019 |


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed.*

Rene L. Valladares, Federal Public Defender, and Ellesse D. Henderson, Bradley D. Levenson, Tiffany L. Nocon, and David Anthony, Assistant Federal Public Defenders, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

Appellant William Castillo, who was sentenced to death in 1996, filed a procedurally barred postconviction petition for a writ of habeas

19-23417

corpus asserting that he was entitled to a new penalty hearing. He claimed he demonstrated good cause and prejudice to excuse the procedural bars based on *Hurst v. Florida*, 577 U.S. ___, 136 S. Ct. 616 (2016). He specifically argued that *Hurst* did two things: (1) it established that the weighing component of Nevada's death penalty procedures is a "fact" that must be proven beyond a reasonable doubt, and (2) it clarified that *all* eligibility determinations, regardless of whether they are factual, are subject to the beyond-a-reasonable-doubt standard. We recently rejected the first argument, *Jeremias v. State*, 134 Nev., Adv. Op. 8, 412 P.3d 43, 53, *cert. denied*, ___ U.S. ___, 139 S. Ct. 415 (2018), and in doing so, we reaffirmed our prior decisions that a defendant is death-eligible in Nevada once the State proves beyond a reasonable doubt the elements of first-degree murder and at least one statutory aggravating circumstance, *Lisle v. State*, 131 Nev. 356, 365-66, 351 P.3d 725, 732 (2015). We previously rejected the second argument that the beyond-a-reasonable-doubt standard does not apply to the weighing of aggravating and mitigating circumstances in *Nunnery v. State*, 127 Nev. 749, 772, 263 P.3d 235, 250-51 (2011). Castillo fails to demonstrate that these prior decisions were incorrect or that *Hurst* compels us to reach a different result. Thus, he fails to demonstrate good cause to excuse the procedural bars, and the district court correctly denied his petition.

## FACTS AND PROCEDURAL HISTORY

Castillo bludgeoned an elderly woman to death in 1995 and was sentenced to death. After this court affirmed the judgment of conviction on direct appeal, *Castillo v. State*, 114 Nev. 271, 956 P.2d 103 (1998), Castillo filed a postconviction petition for a writ of habeas corpus, which was denied. Later, he filed a second postconviction petition for a writ of habeas corpus,

which was also denied. In 2017, he filed the postconviction petition at issue here, his third petition filed in state court. Because the 2017 petition was not filed within one year after the remittitur issued from his direct appeal and because Castillo had previously sought postconviction relief, the district court denied it as untimely, *see* NRS 34.726, successive, *see* NRS 34.810(2), abusive, *see id.*, and barred by laches, *see* NRS 34.800(2), concluding that Castillo failed to demonstrate good cause and prejudice to excuse the various procedural bars. This appeal followed.

## DISCUSSION

Under Nevada law, a petitioner cannot relitigate his sentence decades after his conviction by continually filing postconviction petitions unless he provides a legal reason that excuses both the delay in filing and the failure to raise the asserted errors earlier, and further shows that the asserted errors worked to his "actual and substantial disadvantage." *State v. Huebler*, 128 Nev. 192, 197, 275 P.3d 91, 95 (2012). Castillo argues that he demonstrated good cause and prejudice because the United States Supreme Court's decision in *Hurst* provided him with new and meritorious claims for relief that were not available earlier. *See Bejarano v. State*, 122 Nev. 1066, 1072, 146 P.3d 265, 270 (2006). To resolve this contention, we must determine whether his interpretation of *Hurst* has merit, which we undertake de novo. *See Huebler*, 128 Nev. at 197, 275 P.3d at 95.

*The holding in Hurst v. Florida, 577 U.S. ___, 136 S. Ct. 616 (2016)*

In *Hurst*, the United States Supreme Court applied *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002), to Florida's death penalty statutes. The Florida statutes created a system where the jury considered evidence of aggravating and mitigating circumstances and then recommended to the judge whether to impose a

death sentence. *Hurst*, 577 U.S. at ___, 136 S. Ct. at 620. Under that system, the judge made the ultimate decision whether to impose a death sentence, including her own determination whether any aggravating and mitigating circumstances existed. *Id.* The Court held that "Florida's sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance," violated the Sixth Amendment. *Id.* at ___, 136 S. Ct. at 624.

We considered *Hurst*'s impact on our death penalty system in *Jeremias v. State*, 134 Nev., Adv. Op. 8, 412 P.3d 43 (2018). The appellant in that case argued that *Hurst* established, for the first time, that "where the weighing of facts in aggravation and mitigation is a condition of death eligibility, it constitutes a factual finding which must be proven beyond a reasonable doubt." *Id.* And pointing to language in some of this court's prior decisions stating that a defendant is not death-eligible unless a jury concludes both that there are aggravating circumstances and that any mitigating circumstances do not outweigh those aggravating circumstances, he argued that he was entitled to a new penalty hearing because the jury was not properly instructed on the burden of proof. *Id.* We disagreed for two main reasons. First, we held that the appellant was taking language in *Hurst* out of context and the decision did not announce new law relevant in Nevada. *Id.* at 53-54. Second, we explained that while some of this court's prior decisions described the weighing of aggravating and mitigating circumstances as part of the death-eligibility determination, we had reiterated in *Lisle v. State*, 131 Nev. 356, 365-66, 351 P.3d 725, 732 (2015), that a defendant is death-eligible once the State proves the elements of first-degree murder and the existence of at least one statutory aggravating circumstance. *Jeremias*, 134 Nev., Adv. Op. 8, 412 P.3d at 54.

*Hurst did not redefine the word "fact"*

Castillo first argues that *Hurst* does more than merely analyze Florida's death penalty procedures in light of *Apprendi* and *Ring*. Pointing to language in *Hurst* describing the outcome of the weighing determination in Florida as a fact and suggesting it was a critical finding necessary to increase the defendant's sentence, Castillo asserts that *Hurst* establishes that whenever a State conditions death-eligibility on the weighing of aggravating and mitigating circumstances, the outcome of that weighing is a fact subject to the burden of proof beyond a reasonable doubt. We do not agree. As we indicated in *Jeremias*, a close reading of *Hurst* shows that the few references to the weighing component of Florida law as a factual finding involved quotations from the Florida statute. 134 Nev., Adv. Op. 8, 412 P.3d at 53-54. Our conclusion that *Hurst* broke no new ground in this area is consistent with that of "[m]ost federal and state courts," *State v. Lotter*, 917 N.W.2d 850, 863 (Neb. 2018) (footnotes omitted), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. March 13, 2019) (No. 18-8415), and Castillo fails to demonstrate that it was incorrect.

*The beyond-a-reasonable-doubt standard only applies to facts*

Castillo also raises a new argument that we have not previously considered: he suggests that *Hurst* eliminated the distinction between factual findings and other determinations for purposes of applying *Apprendi* in the context of capital sentencing. He contends that, under *Hurst*, regardless of whether the jury is being asked to make a factual finding, a moral determination, or something else altogether, if its decision makes a defendant death-eligible, it is an element of the capital offense and therefore must be alleged in the charging document, submitted to a jury, and proven beyond a reasonable doubt. Nothing in *Hurst* can be read to

SUPREME COURT
OF
NEVADA

(O) 1947A

5

support this assertion. Like *Apprendi* and *Ring*, *Hurst* clearly limits its reach to *facts* that expose a defendant to a higher sentence. *Hurst*, 577 U.S. at ___, 136 S. Ct. at 619 (holding that "[t]he Sixth Amendment requires a jury, not a judge, to find each *fact* necessary to impose a sentence of death" (emphasis added)); *accord Ring*, 536 U.S. at 589 (holding that "[c]apital defendants, no less than noncapital defendants . . . are entitled to a jury determination of any *fact* on which the legislature conditions an increase in their maximum punishment" (emphasis added)); *Apprendi*, 530 U.S. at 490 (holding that "any *fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (emphasis added)). Indeed, to support his argument that *Hurst* extends the *Apprendi* rule to all determinations, regardless of whether they involve fact-finding, Castillo circles back to the same mischaracterized language in *Hurst* discussed above, which uses the word "fact" when quoting the Florida statute. We find no credence in the assertion that the Court's scattered references to the language in Florida's statute were intended to broaden the reach of *Apprendi* and *Ring* by obliterating the distinction between factual findings and moral choices regarding the weight to ascribe to a factual finding. *See generally In re Winship*, 397 U.S. 358, 363 (1970) (discussing the genesis of the burden of proof beyond a reasonable doubt and its role in reducing the risk of convictions resting on factual error). Castillo fails to demonstrate that *Hurst* announced a new rule relevant to the weighing component of Nevada's death penalty statutes.

*The weighing determination is not part of death-eligibility*

Even if *Hurst* announced the new rule Castillo advances, we reiterate that it would have no impact because the weighing of aggravating

SUPREME COURT
OF
NEVADA

(O) 1947A

and mitigating circumstances is not part of death-eligibility under our statutory scheme. *See Lisle*, 131 Nev. at 365-66, 351 P.3d at 732. In Nevada, the facts that expose a defendant to a death sentence, and therefore render him death-eligible for the purposes of *Apprendi* and *Ring*, are the elements of first-degree murder and any statutory aggravating circumstance.[1] *Jeremias*, 134 Nev., Adv. Op. 8, 412 P.3d at 54; *Lisle*, 131 Nev. at 365-66, 351 P.3d at 732. Although the relevant statutes provide that a jury cannot impose a death sentence if it concludes the mitigating circumstances outweigh the aggravating circumstances, NRS 175.554(3); NRS 200.030(4)(a), that provision guides jurors in exercising their discretion to impose a sentence to which the defendant is already exposed, *Apprendi*, 530 U.S. at 481 (acknowledging that, at common law, a sentencer always had the discretion to "tak[e] into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute"), and checks the unfettered exercise of that discretion, *see generally Gregg v. Georgia*, 428 U.S. 153, 220-21 (1976) (White, J., concurring) (indicating that systems of capital punishment that give the sentencer unguided discretion are cruel and unusual).

## CONCLUSION

Because Castillo's arguments regarding *Hurst* lack merit, he fails to demonstrate good cause and prejudice to excuse the various procedural bars precluding him from challenging his sentence at this late

---

[1]We reject Castillo's argument that he should be permitted to take advantage of the apparent confusion caused by our prior lack of precision when using the term "eligibility." As Castillo himself points out, "the relevant inquiry is one not of form, but of effect." *Apprendi*, 530 U.S. at 494.

SUPREME COURT
OF
NEVADA

(O) 1947A

date. We therefore conclude that the district court did not err by denying Castillo's postconviction petition for a writ of habeas corpus and affirm.[2]

_____, J.
Stiglich

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

---

[2]Castillo also argues that *Hurst* establishes that the practice of appellate reweighing of aggravating and mitigating circumstances is unconstitutional. Setting aside the fact that *Hurst* says nothing on this issue, the Supreme Court has permitted appellate reweighing. *Clemons v. Mississippi*, 494 U.S. 738, 750 (1990). The Court has not overruled *Clemons* and therefore it remains good law. *See Bosse v. Oklahoma*, 580 U.S. ___, ___,137 S. Ct. 1, 2 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." (quoting *Hohn v. United States*, 524 U.S. 236, 252-53 (1998))).